Nash, J.
 

 We think his Honor erred in his instructions. The word
 
 offal,
 
 if not in general a word of art, may be such in the relation, in which it is used in this particular business, and therefore, may admit of parol evidence to show, in what sense, according to
 
 the
 
 custom of fishing, it is used. But here there can be no pretence, that there was any evidence of a general custom among the fishermen, upon the subject. Two witnesses were examined to this point. The first stated, that for nine years before 1837, he had lived as an overseer upon a plantation, to which was attached a fishery, which was under lease during a portion of that time ; and that both the lessee, and the owner, after the expiration of the lease, were in the habit, or custom, of cutting and trimming the herrings for market; and that the same custom existed in an ad-joiningfishery,buthe expressly stated thathe didnotknow, whether the lessees of those fisheries, cut and trimmed their herrings, “ in conformity to an existing custom, or in execution of the terms of their lease.” He further stated “ that there were
 
 many
 
 other fisheries on the Albe-marle sound, but that he had no acquaintance with any practice observed at them of cutting and trimming all the herrings caught at them.” The other witness stated, “that, previous to the year 1840, he had
 
 very little acquaintance,
 
 with the fishing business, and that it was not
 
 *112
 
 until
 
 1842,
 
 that the fishermen
 
 began to put
 
 up fish in gross.” Neither of these witnesses prove the existence of any general custom upon the subject. Oat of the many fisheries on the Albemarle, the plaintiff has selected two, how near to the one leased by the defendant, is not stated, and asks to hold them bound by the course pursued ■at them. - The second witness knows nothing of any custom of any kind previous to IS40. If the above evidence was properly received by the Court, it certainly was not such as would authorise the jury in finding the existence of any such general custom, as would control the plain and natural import of the words used in the lease. Nor is there any thing in the case to show, if such a custom did exist, that it was so general, that the parties in contracting this lease, must be presumed to have had reference to it. 3
 
 Pk. on Ev.
 
 1410 and 1412.
 
 Heald
 
 v.
 
 Cooper,
 
 3 Greenleaf 32, cited there. What then is the natural meaning of the word
 
 offal?
 
 The best Lexicographers define it to be, “ waste meat, carrion, refuse, that which is thrown away as of no value, or fit only for beasts.” When used in a covenant of this kind, it must mean, that portion of the product of the seine, which is not used for food, and all the portion of
 
 that
 
 which is used for food, and which is taken
 
 from it, in
 
 preparing it for market, or merchantable fish, as by exposure, has become unfit for such use. Thus it often happens that many fish are caught, which are not fit for food; and, very often from the great abundance that are caught, many become spoilt; all these, as well as
 
 the
 
 cuttings and trimmings are
 
 offal;
 
 and these constituted what the defendants covenanted the plaintiff should enjoy. We consider nothing as
 
 offal
 
 at a fishery, which is fit for food, and is consumed or sold for that purpose. Have they been guilty of the first breach assigned in the plaintiff’s declaration? We think not. Is the second.breach sustained, by proof that in barrelling their fish whole, they have violated their contract ? We see no restriction in
 
 *113
 
 the covenant, as to the mode of preparing their fish for market. It is proved by the plaintiff, that, all the fish, caught previous to 1837, were not cut and trimmed, for many were barrelled as roe-herrings for family use. Herrings so put up are neither cut nor trimmed. They do not therefore furnish near so much offal, as those which are so prepared for market. What if the defendants, instead of putting up a few barrels of roe-herrings, had so prepared for market all that were fit for such purpose ; would it have been a violation of his covenant, even though one half or two thirds of all he caught, were so prepared ? Certainly not; and yet the profits of the plaintiff would, in that case, be as much diminished, as they are now, according to his complaint.
 

 We are of opinion, that, under their lease, the defendants had a right to prepare their fish for market, in any way their own interest might dictate ; and that in bar-relling them in gross, they have not violated any right which the plaintiff has reserved to himself. The plaintiff might, if he had so chosen, have expressed in the covenant in what manner the fish should be prepared for market. They were his property, and the defendant could not have thrown them away unless the plaintiff had been guilty of unnecessary delay in removing them, nor have given them away, or sold them, or in any manner appropriated them to his own use.
 

 Per Curiam. Judgment reversed, and a
 
 venire de novo
 
 awarded.